## THOMPSON-STARRETT CO. v. VANDEVORT.

(Circuit Court of Appeals, Third Circuit. May 1, 1911.)

### No. 17.

CONTRACTS (§ 198*)—CONSTRUCTION—CONTRACT FOR SERVICES.

Plaintiff contracted in writing to expedite delivery of structural steel and iron for defendant during a specified term, securing delivery at the times and in the manner required by defendant in its building operations, supervising the manufacture thereof through the mills, etc., for which he was to receive 40 cents per ton. Defendant was then engaged in the construction of a large building, the steel for which was furnished by the owner. At the time the contract was made two-thirds of the building had been completed, and plaintiff had been employed in expediting delivery of the steel therefor, as well as that used in the construction of another large building, which was also furnished by the owner. Held that, in view of the situation and relation of the parties, the contract applied to the steel to be used in the completion of such building, and was not limited to such steel as should be furnished by defendant itself.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 198.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action at law by N. A. Vandevort against the Thompson-Starrett Company. Judgment (182 Fed. 875) for plaintiff, and defendant brings error. Affirmed.

Patterson, Sterrett & Acheson and Wm. A. Steinmeyer, for plaintiff in error.

Lyon & Hunter, for defendant in error.

Before BUFFINGTON and LANNING, Circuit Judges, and Mc-PHERSON, District Judge.

BUFFINGTON, Circuit Judge. In the court below, Vandevort brought suit and recovered judgment against the Thompson-Starrett Company for damages for breach of contract in writing between them,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dated March 4, 1908. Thereupon the latter sued out this writ. On the assumption that the case turned upon the construction of the contract, both parties asked for binding instructions. We are of opinion the construction placed upon it by the court below was right.

It seems that John Wanamaker, on April 1, 1904, contracted with the American Bridge Company of New York for the structural steel and iron, f. o. b. Philadelphia, required in the rebuilding of his department store in the latter city. The material was to be in accordance with the plans of Wanamaker's architect. Three months' notice was to be given of requirements, and all necessary data and directions as to deliveries furnished the Bridge Company. Subsequently the Thompson-Starrett Company contracted with Wanamaker to erect the store; he furnishing the structural steel and iron as above noted. In doing the work, the store, which covered an entire block, was rebuilt in three successive, separate sections. During the building of the first and second sections, Vandevort was employed by the Thompson-Starrett Company to expedite for it the structural steel therefor and for the Terminal Railroad Station at Washington, the steel for which was also being furnished by the owner of that building. Before the erection of the third subdivision was begun, Vandevort made the contract in suit, whereby he—

"agrees to expedite the deliveries of structural steel for Thompson-Starrett Company, including cast iron columns and bases, with the exemption expressed in paragraph III of this agreement, for a period of two years, commencing April 1, 1908. * * * It is mutually understood and agreed by and between N. A. Vandevort and Thompson-Starrett Company that the services of N. A. Vandevort covered by this agreement are as follows: Generally the securing of the delivery of the structural steel and cast iron necessary in Thompson-Starrett Company's business, at the times and in the manner required by Thompson-Starrett Company; supervising the entering of the rolling lists and following them through the fabricating company's offices and the rolling mills, until the plain material has been delivered at the shops of the fabricating company; to supervise the making of shop drawings, the fabrication and shipment of finished material, and, where necessary, to trace cars and expedite movement of such cars to destination; to keep in communication with Thompson-Starrett Company, through its chief engineer, reporting once weekly, or whenever requested. the condition of the work at the mills and in the shops as to plain and finished material."

The exemption in paragraph III was "of such cast iron columns and bases obtained outside a territory, inclosed by a radius of fifty (50) miles from Pittsburgh." When the erection of the third subdivision was begun by the Thompson-Starrett Company, Vandevort's offer to expedite the steel used therein was refused; the Thompson-Starrett Company alleging it was not covered by the contract. He then brought suit.

To us it is clear that the contract, in the light of the then situation of the parties, covered this work. The Thompson-Starrett Company at that time had on hand the uncompleted Wanamaker contract. It was business in which it was then engaged. That business required "the securing of the delivery of the structural steel and cast iron necessary" and "at the times and in the manner required by Thompson-Starrett Company." Vandevort had done expediting, as an em-

ployé, of two-thirds of the contract, and these broad, inclusive words, read in the light of the situation of the parties (and a contract must so be read), make it clear that the purpose of the parties, inter alia, was to cover all of their expediting business, with the exception of the cast iron articles specified in paragraph III.

It is contended, however, that, in view of paragraph IV of the contract, which provides that "Thompson-Starrett Company hereby agrees that not over one-third of its total tonnage, covered by this agreement, will be placed outside of the Pittsburgh territory above described," this agreement was simply meant to cover structural steel purchased by the Thompson-Starrett Company, and that, inasmuch as Wanamaker furnished this steel, the contract did not apply to it. But in our view such a wide-reaching effect cannot be given to paragraph IV. Vandevort resided in Pittsburgh. Expediting required his presence at the structural steel mills rolling the steel, and the obvious purpose of this paragraph, in connection with paragraph V, was to narrow his work to the Pittsburgh district, by making an additional charge of 10 cents per ton on work outside that territory.

We are therefore of opinion the court below properly construed the contract, and its judgment is affirmed.